IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

FILED
MAY 23 2013
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | MO-13-CR-61 |
| | § | |
| JUAN CARLOS VENEGAS, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION DENYING DEFENDANT'S AMENDED MOTION TO SUPPRESS

### Background

Defendant Juan Carlos Venegas was indicted on February 27, 2013, with one count of using a facility in interstate or foreign commerce (a cellular telephone) to knowingly persuade, induce and entice and individual under the age of 18 to engage in sexual activity for which Defendant could be prosecuted under Texas Penal Code Section 43.25—sexual performance by a child. (Doc. 13).

Defendant filed a general motion to suppress on March 11, 2013, contending only that Defendant was unlawfully detained and constructively under arrest without even reasonable suspicion, let alone probable cause. (Doc. 25). Defendant filed his Amended Motion to Suppress on April 12, 2013. (Doc. 47). In his amended motion to suppress, Defendant contests his detention and arrest, making the following allegations:

1. The sheriff's deputies had no legal basis to initially detain Defendant when dispatched to the house; there was no evidence of a crime. There was also no basis to continue to detain Defendant.

2. Defendant was not properly informed of his *Miranda* rights, which led to a coerced statement. At the hearing, Defendant also implicitly argued that Defendant, as a deaf individual, did not understand the *Miranda* warnings he was given in writing because deaf individuals do not have the same vocabulary as those who can hear.

3. The search of Defendant's cell phone was unlawful.

4.      The search of Defendant's room and truck were unlawful.

(Doc. 47).

The Court held a hearing on these issues on April 25, 2013, where it orally denied the motion. The Court's memorandum opinion now issues.

## Factual Background

On July 2, 2012, at 6:52 a.m., Crane County Sheriff's Department received a call from a local resident who stated he had just discovered a 20-year-old male asleep in bed with his 13-year-old son. Crane Police Officer Luis Narvarrete responded first and secured the scene and later waited with Defendant while a deputy interviewed the victim and his father. Sheriff's Deputy Chris Villegas arrived at the house shortly after Officer Navarrete and identified the 20-year-old male as Defendant. Upon arrival, it was learned Defendant was deaf. Defendant was advised, in writing, by Deputy Chris Villegas that he was not under arrest at that time and was asked if he was willing to speak to them back at the Sheriff's Office. Venegas indicated on the paper that he was willing to go talk with them. (Gov. Ex. A). A certified sign language interpreter was located, hired, and brought in to assist with the interview. Prior to the interview, Deputy Villegas sought consent, in writing, to search Defendant's cell phone, to which Defendant consented, also in writing, and then provided Deputy Villegas with the code to unlock his cell phone. Before the interview began, Defendant was also advised of his *Miranda* rights in writing and through the interpreter.

During the interview, Defendant admitted to being in relationship with the victim (although he initially denied it) and that they had each touched each other's genitals on separate occasions, and that sexual acts had been performed. The text messages Deputy Villegas found on Defendant's phone between the two also clearly indicated that they were indeed a "couple." One set of messages

even discusses the possibility of the two showering together.

On June 30, 2012, the victim indicated via text message that his mom did not want him to see Defendant any longer because it was not right for a 20-year-old to be dating a 13-year-old. Defendant persuaded Defendant to stay with him, but not tell anyone.

On July 1, 2012, Defendant and the victim had planned to meet in person, and Defendant began texting the victim a few hours prior to the scheduled meeting time, the last message sent just prior to 11:00 p.m. The victim explained to Deputy Villegas that he and the Defendant had planned for Defendant to come over and sneak inside after the victim's parents were asleep. The victim also contending nothing sexual happened that evening; however, the victim also changed his story several times about the extent of his relationship with Defendant previously. The victim did acknowledge that he and the Defendant kissed on different occasions that evening before they both went to sleep in the same bed. The next morning the victim's father found Defendant in bed and under the covers with his son and called the Sheriff's Department who came to the house to investigate.

The victim and his father were interviewed on the scene. Deputy Villegas decided to wait to interview Defendant until he could get an American Sign Language interpreter and conducted the interview at the Sheriff's Department after securing one. Following the interview, where Defendant made several incriminating statements, Defendant was arrested on state charges. He was later released on bond. A federal arrest warrant for Defendant was signed on July 18, 2012, but Defendant could not be served because he had fled to Mexico and did not return until February 16, 2013; he was apprehended at the Del Rio Port of Entry on that day attempting to re-enter.

## Discussion

At the outset, the Court finds Deputy Chris Villegas to be a credible witness. Deputy

Villegas has been a deputy with Crane County Sheriff's Department since 1997. The Court also finds Crane Police Officer Navarrete to be a credible witness.

***Basis for detention***

Defendant contends, first, that there was no reasonable suspicion or legal basis to detain Defendant, further explaining that there was no evidence that a crime had been committed when the deputies arrived at the victim's house. (Doc. 47).

The Court first notes that Defendant was explicitly told he was not under arrest during his initial encounter with Deputy Villegas. Rather, Deputy Villegas asked Defendant in writing to voluntarily accompany them to the Sheriff's Department (Gov. Ex. A) so they could "look into things to see what happened." (Gov. Ex. B). Deputy Villegas testified at trial that he planned to detain Defendant until he could interview Defendant about his presence in the victim's bedroom and the nature of their relationship and recent sexual activities, if any. The Court finds there was clearly reasonable suspicion and a legal basis for Deputy Villegas to detain Defendant. "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the ... seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). Defendant was a 20-year-old stranger (the father appears to have very limited knowledge of who Defendant is) found in the victim's house. Further, not only was Defendant found in the victim's residence without the owner's permission, but the father and Officer Navarrete found him in the same bed as his minor son, and, in Government's Exhibit E, the minor victim acknowledges Defendant, a 20-year-old man, was under the covers asleep with the minor victim.

Clearly, there was at the bare minimum reasonable suspicion to detain Defendant at that point

on the possibility that Defendant committed the offense of indecency with a child, since he was found laying in bed with the minor victim, a violation of Texas Penal Code § 21.11. Indecency with a child means any sexual contact with a child the genitals or anus of the defendant or the child, whether either individual had clothes on or not. Additionally, it includes the exposure of the genitals or anus of either party with the intent to arouse or gratify the sexual desire of any person.

Deputy Villegas also learned from the victim that he and Defendant were in a romantic relationship together. This significantly increased Deputy Villegas's suspicion.

Therefore, there was clearly a legal basis and reasonable suspicion to detain Defendant when the deputies initially arrived at the victim's house. The amended motion to suppress is denied as to this ground.

*Miranda – Custodial Interrogation*

Defendant next makes the argument that he was not properly read his *Miranda* rights. Defendant was given a written copy explaining his *Miranda* rights before questioning, which he signed and initialed in several places by Defendant. (Gov. Ex. C, E). A certified American Sign Language interpreter also signed the *Miranda* warnings as Deputy Villegas read them to Defendant. However, Defendant still contends "there is no evidence that Defendant was properly Mirandized" because the reading of the *Miranda* rights is suspect because "the interpreter's signing is blocked from camera view, and, clearly Defendant's "*Miranda* Warnings [were not provided] in the manner envisioned by *Miranda v. Arizona* as is standard police procedure." (Doc. 47).

The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established a "procedural safeguard...to secure the privilege against self-

incrimination" during custodial interrogations. *Id.* at 444. Under *Miranda,* "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

Here, prior to any questioning, Deputy Villegas informed Defendant in writing and via certified American Sign Language interpreter:

1. You have the right to remain silent and not make any statement at all and that any statement you make may be used against you at your trial.
2. Any statement you make may be used as evidence against you in court.
3. You have the right to have a lawyer present to advise you prior to and during any questioning.
4. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning.
5. You have the right to terminate the interview at any time.

(Gov. Ex. C).

Defendant signed his initials next to each number and signed the waiver at the bottom of the page which states, "I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I have them and willingly make a statement." (*Id.*). Defendant clearly was informed of his *Miranda* rights and clearly waived them. *Miranda,* 384 U.S. at 444. Movant's confession was voluntary. Therefore, Defendant's motion to suppress is denied with regard to this claim.

At the hearing, Defendant also tried to make a new argument that deaf people do not have anywhere near the size vocabulary and reading comprehension that individuals who can hear have. This argument is has no merit because (a) Defendant's counsel never put on an expert to testify to these general statements, and, more importantly, (b) there was no testimony or evidence submitted that Defendant personally had a limited vocabulary and did not understand what he was being told.

Defendant did submit some of his high school testing records, but those were several years old and the Court finds them to be irrelevant. Even if they were relevant, Defendant's scores were not poor anyway. (Def. Ex. 1). To the contrary, Defendant's reading and comprehension level were scored as intermediate. (*Id.*). Under English Language Arts, Defendant scored high in Basic Understanding and Analysis and Evaluation. (*Id.*). Moreover, Movant's written responses and follow up questions to Deputy Villegas's written questions demonstrate Defendant's ability to understand the questions. Therefore, this argument is without merit.

***Cellular Telephone Records***

Defendant also contends evidence obtained from Defendant's cellular phone and the victim's cellular phone and phone records should be suppressed because: (1) The cellular phone records were obtained with a defective affidavit, and (2) Deputy coerced Defendant into giving him access to Defendant's cellular phone without having given Defendant his *Miranda* warnings.

The Court first notes that Defendant does not have standing to challenge a search of phone that does not belong to him, such as the victim's phone. Additionally, Defendant has not identified any specific information from the alleged search of cell phone records that the Government received or is planning to use as evidence. As the Court understands from the parties' representations at the hearing, the only cellular phone evidence obtained in this case resulted from the search of Defendant's cellular pursuant to Defendant's consent. Therefore, there does not appear to be any evidence to suppress with regard to this claim.

The Defendant also claims that Deputy Villegas coerced Defendant into giving him the password for his cellular phone. "The voluntariness of consent is a question of fact to be determined from a totality of the circumstances." *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002). To

determine whether consent was given voluntarily, this Court examines the totality of the circumstances surrounding the consent, considering such factors as:

(1) the voluntariness of the defendant's custodial status,
(2) the presence of coercive police procedures,
(3) the extent and level of the defendant's cooperation with police,
(4) the defendant's awareness of his right to refuse consent,
(5) the defendant's education and intelligence, and
(6) the defendant's belief that no incriminating evidence will be found.

*Schneckloth v. Bustamante,* 412 U.S. 218, 219, 227 (1973); *United States v. Solis,* 299 F.3d 420, 435–36, n.21 (5th Cir. 2002); *United States v. Thompkins,* 130 F. 3d 117, 120 (5th Cir. 1997). No single factor is dispositive. *Schneckloth,* 412 U.S. at 226-227. Although a defendant's knowledge of his right to refuse consent is a factor that is considered, officers are not required to inform a defendant of this right. *See United States v. Hernandez,* 279 F.3d 302, 308 (5th Cir. 2002); *United States v. Drayton,* 536 U.S. 194, 206–07 (2002) (the totality of the circumstances control without giving extra weight to the fact the officer did not advise the defendant of the right to refuse consent).

Here, the Defendant's custodial status teeters between voluntary presence and detention. At the outset, Defendant was not detained; rather, Defendant was informed he was not under arrest and then asked whether he would like to go to the Sheriff's Department to answer some questions. Defendant was specifically asked, "Yes or no"? Defendant circled "yes." (Gov. Ex. A). The interview, therefore, did not start out as a custodial interrogation; however, Deputy Villegas later acknowledged Defendant was detained until they could get a certified sign language interpreter to communicate with him about the incident. But while at the Sheriff's Department, Defendant was placed in a room that was unlocked and Defendant was free to leave the room; to wit, he left the room to use the restroom without supervision on two separate occasions. (Gov. Ex. D). Defendant closed the door behind him when it was left open, as well. (Gov. Ex. D). Defendant was offered

and provided water and food, as well, while he waited.

Based on his actions, Defendant did not appear to feel coerced or forced or threatened by the deputies. Indeed, during the interview conducted later on, Defendant makes several joking statements with Deputy Villegas. Defendant fully cooperated with police and did not appear to hesitate based on the video in Government's Exhibit D. Defendant consented to a search of his phone without hesitation and also provided the unlock code when asked. Defendant argues the consent was invalid because he had not yet been read his *Miranda* rights, but "[t]he failure of officials to give *Miranda* warnings before asking for consent does not prohibit the use of a defendant's in-custody statements granting consent to a search." *United States v. Dancy* 861 F.2d 77, 80 (5th Cir. 1998) (holding that *Miranda* warnings are not required to validate in-custody consent searches). The reason is that a "statement granting 'consent to a search...is neither testimonial in nature nor communicative in the Fifth Amendment sense.'" *Stevens*, 487 F.3d at 242.

There is no indication that Defendant was of anything other than average intelligence. There is no indication that Defendant thought any incriminating evidence would be found on the phone, as evidenced by the fact that he readily consented to a search of it. Finally, Defendant was not under arrest at the time consent was sought, but he was detained while the investigation was pending.

Therefore, based on a totality of the circumstances, the Court finds the search of Defendant's cell phone was consensual and lawfully permissible. While no single factor is determinative, the Court finds the following factors to be important in this case: Defendant's custodial status and freedom to move around the office, the absence of coercive police procedures, and Defendant's level of cooperation with the deputies. The Court also finds the search of Defendant's phone was not limited in scope.

Therefore, the motion to suppress is denied on this ground, as well.

### *Search of Defendant's truck and search of room*

Defendant also seeks suppression of any evidence obtained from an unlawful search of Defendant's room and truck. (Doc. 47). Defendant has not identified what evidence, if any, was obtained from these searches. The Government contends no evidence was obtained from these searches and, therefore, there is no evidence to be suppressed even assuming both were searched illegally (although the Government maintains there were lawfully searched).

The Court denies Defendant's motion on this ground since there is nothing to be suppressed.

### Conclusion

Based on the previous discussion, the Court denies Defendant's Amended Motion to Suppress. (Doc. 47).

**It is so ordered.**

**Signed this** \_\_\_\_ **day of May, 2013.**

Robert Junell
United States District Judge