IN THE UNITED STATES OF AMERICA

FOR THE WESTERN DISTRICT OF TEXAS

MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| V. | § § § | MO-13-CR-00061-RAJ |
| JUAN CARLOS VENEGAS | § § § | |

**DEFENDANT'S BRIEF IN SUPPORT OF**

**ADMISSIBILTY OF EXPERT TESTIMONY OF DR. GABRIEL LOMAS**

**TO THE HONORABLE JUDGE COUNTS:**

**COMES NOW,** Defendant, Juan Carlos Venegas (hereinafter "the Defendant"), by and through his undersigned attorney of record, and respectfully requests this Court allow the Defendant's expert witness, Dr. Gabriel Lomas, to testify in the above entitled case.

**I. FACTS**

Briefly, by way of background, Defendant was charged with using a facility of interstate and foreign commerce to knowingly persuade, induce and entice an individual under the age of 18 years to engage in sexual activity pursuant to 18 U.S.C. §2422(b). Defendant was born deaf after his mother suffered from rubella during her pregnancy. The deaf are the smallest minority group in the United States. He has lived without any means of communication except minimal gestures and actions until he was finally enrolled in a deaf program in Odessa, Texas, and learned to sign beginning at the age of ten. He has lived in a small, rural town of Crane, Texas since he

was approximately nine (9) years old. It was in Crane, Texas, where he was arrested and the allegations ensued.

On July 18, 2013, the Government filed its Motion to Exclude Dr. Lomas' testimony pursuant to Fed.R.Crim.P. 16(b)(1)(C) and 702 of the Federal Rules of Evidence. In the alternative, the Government asked that a *Daubert* hearing be held.

On Friday, August 9, 2013, a *Daubert* hearing was held to consider Dr. Lomas' qualifications and the reliability and relevance of his testimony. In support of the instant brief, the defense offers the testimony of Dr. Lomas in its entirety, his Report and his curriculum vita.

The testimony further explained that being born deaf is different from going deaf later in life. American Sign Language is not just signing on the hands. It is far more complicated. Defendant speaks a very clumsy form of American Sign Language given that he learned it later in life. Defendant is resilient as a result of a supportive family and does not show signs of clinical depression though he is expressing sadness.

The United States initially moved to exclude Dr. Lomas' testimony averring initially that he failed the *Daubert* test on all fronts citing authority addressed herein. Later, after direct-examination by the defense, the Government stipulated that Dr. Lomas is qualified. Thus, the only issues that remain for consideration based on the Government's position is whether his testimony is reliable and relevant.

## II. ARGUMENT AND AUTHORITIES

The Defendant seeks to include expert testimony from Dr. Gabriel Lomas at trial. Dr. Lomas is a professor of counseling at Western Connecticut State University in Danbury,

Connecticut. He specializes in general psychological testing, is fluent in American Sign Language, and provides counseling and testing in American Sign Language. Significant psychosociological differences in development exist between the hearing and deaf communities, and many assumptions exist on the part of the general public as to what it means to being deaf, development as someone who is deaf and how the deaf may or may not communicate. Dr. Lomas' testimony will be used to address these psychosociological differences, to address the assumptions and misconceptions a community may have of the deaf, and ultimately to assist the trier of fact to better understand the evidence on both sides and to make a more informed decision as to the facts at issue as permitted by Federal Rule of Evidence 702. Furthermore, Dr. Lomas' testimony is reliable and relevant testimony, based on school records, family history, an individual assessment of the Defendant, and the administration of normed psychological testing that is well-accepted in his discipline and peer-reviewed.

### A. Dr. Lomas' testimony is admissible as assisting the trier of fact under Federal Rules of Evidence 702

Rule 702 of the Federal Rules of Evidence provides that an expert witness may testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although an expert witness may testify as to specialized knowledge, an expert "may not offer an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010). Following precedent established by the Fifth Circuit, Dr. Lomas' testimony is admissible because it does not aver as to the Defendant's guilt or innocence, but rather assists the trier of fact to understand the proffered evidence from both sides which extends to a better informed decision, in the end, by the jury.

Expert testimony as to the behavior of persons accused of sexual offenses was admissible in *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006). In *Hitt*, the defendant was convicted under 18 U.S.C. §§ 2422–23. *Id.* at 150. On appeal, the defendant argued that the district court erred in allowing expert testimony as to the typical behavior of child molesters because fact testimony was all that was necessary to determine whether the defendant's actions were consistent with an illicit purpose. *Id.* at 158. The Fifth Circuit court held that the district court did not abuse its discretion in allowing the expert testimony regarding the typical behavior of child molesters. *Id.* In so holding, the court stated that "[t]his court has allowed, without discussion, the use of expert testimony to explain the behavior of those accused of sexual offenses." *Id.*(emphasis added).

In *Gonzalez-Rodriguez*, the defendant was convicted of possession with intent to distribute. *Id.* at 357. On appeal, the defendant argued that expert testimony by a federal agent as to the profile of drug couriers was inadmissible. *Id.* at 362. In determining that a portion of the agent's testimony was permissible, the court stated that "there is a fine but critical line between expert testimony concerning methods of operation unique to the drug business, and testimony comparing a defendant's conduct to the generic profile of a drug courier. The former may permissibly help a jury understand the significance and implications of other evidence presented at trial." *Id.* at 364. The court therefore allowed testimony as to the "basic business model for running large quantity methamphetamine." *Id.* In the instant case, Dr. Lomas' is similarly going to educate the jury as to a specific subset of the population and its basic communication model without reference as to why the Defendant because he is deaf cannot mirror the conduct alleged. Dr. Lomas' testimony emphasized the testing and circumstances that address how we all learn to communicate and how it is telling of how we communicate and how that is different depending

4

on various influences without comment that the deaf are incapable of a particular element of the offense or the alleged conduct herein.

The Fifth Circuit court held that expert testimony supporting a defense of insanity was properly excluded in *United States v. Eff*, 524 F.3d 712, 714 (5th Cir. 2008). In that case, the defendant was charged with arson and attempted to plead a defense of insanity because of his diagnosis of Klinefelter's Syndrome and its impact on his ability to appreciate the wrongness of his acts. *Id.* at 714. In affirming the lower court's decision to disallow the testimony, the court explained that "[a]n expert is [] prohibited from testifying that a severe mental disease or defect does or does not prevent a defendant from appreciating the quality or wrongfulness of his acts." *Id.* at 716. Such testimony would violate Federal Rules of Evidence 704(b)'s prohibition of expert testimony that opines as to whether the defendant had the mental state or condition constituting an element of the crime charged. *Id.* (citing Fed. R. Evid. 704(b)).

In the present case, Dr. Lomas' expert testimony is permissible because rather than averring as to the Defendant's mental state or whether a condition constitutes or precludes an element of the crime, it will educate the trier of fact as to evidence presented at trial by both sides, explain what encompasses and leads to particular development in communication in the deaf community and addresses common assumptions and misconceptions on the part of the general public that are well-documented. In this manner, the testimony closely resembles that which was held permissible in both *Gonzalez-Rodriguez* and *Hitt*. In *Gonzalez-Rodriguez*, testimony constituting a profile of a subsection of the population—i.e. the profile of drug couriers—was deemed admissible to the extent that it provided a model for the trier of fact and educated them as to the significance and implications of other evidence offered at trial. Similarly, in *Hitt*, expert testimony of the typical behavior of a subset of the population— i.e. the

5

profile of child molesters— was admissible. The proposed testimony of Dr. Lomas would function as a permissible testimony as to the typical behavior and development of another subset of the population in testifying as to the deaf community. This testimony is significantly different from the testimony excluded in *Eff*. In *Eff*, testimony as to a mental defect was excluded on the basis that it would infer whether the defendant had the requisite mental state at the time of the crime. In this case, however, expert testimony will refer to a physical defect and the ramifications of the defect and will not attest to the mental state of the Defendant at the time of the alleged crime. Dr. Lomas' testimony is therefore admissible as assisting the trier of fact in understanding other evidence presented at trial and deciding issues of fact as allowed under Federal Rules of Evidence 702.

### B. Dr. Lomas' testimony is admissible as relevant and reliable per Federal Rules of Evidence 401 and 702 and per the factors established in *Daubert*

Relevant evidence is that which "has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The reliability of expert witness testimony is established in Federal Rules of Evidence 702 which reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(*a*)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(*b*)  the testimony is based on sufficient facts or data;

(*c*)  the testimony is the product of reliable principles and methods; and

(*d*)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The factors for determining the relevance and reliability of an expert's testimony as well as the gatekeeping function of the trial court were articulated in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 593–94 (1993). Dr. Lomas' testimony is both relevant and reliable and thus is admissible under Federal Rules of Evidence 401 and 702.

1. **Dr. Lomas' testimony is relevant as required by Federal Rules of Evidence 401**

In *Daubert*, relevant expert testimony was established as that which "[a]ssists the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591 (quoting Fed. R. Evid. 702). Evidence is not relevant and not helpful if it "does not relate to any issue in the case." *Id.* (quoting 3 Weinstein & Berger P702[02]). In the present case, the Defendant's communication is squarely in issue where he is charged with texting to persuade, induce or entice someone to engage in a sexual act. Dr. Lomas' testimony is relevant to this issue and will assist the trier of fact in understanding the evidence because his testimony will provide information as to the development of communication of deaf persons and the misconceptions and assumptions about deaf persons on the part of the general public.

2. **Dr. Lomas' testimony is reliable as required by Federal Rules of Evidence 702 and the factors established in *Daubert***

Dr. Lomas' testimony is reliable because it adheres to the factors established in *Daubert*. The first criteria for reliable testimony in *Daubert* is whether the expert's technique or theory has been or can be tested. *Id.* at 593. Dr. Lomas' technique and theories have been tested. In his evaluation of the Defendant, Dr. Lomas employed many normed testing mechanisms accepted by the scientific community, including Wechsler Individual Achievement Test, the Bender Gestalt Visual Motor Test, the Personality Assessment Screener, and others.

The second factor in *Daubert* is whether the technique or theory has been subjected to peer review and publication. Dr. Lomas' techniques and theories have been subjected to peer review and publication on numerous occasions. Dr. Lomas has published numerous articles in peer reviewed academic journals. *See* Gabriel I. Lomas and Harold A. Johnson, *Overlooked and Unheard: Abuse of Children Who are Deaf or Hard of Hearing and Their Experience with CPS and Foster Care*, 20 The Family Journal, October 2012, at 376; Gabriel I. Lomas, *Dealing with Change*, 44 Journal of the American Deafness and Rehabilitation Association, 198 (2010); Gabriel I. Lomas, *Social Justice and Deafness*, 43 Journal of the American Deafness and Rehabilitation Association, 124 (2010). Dr. Lomas' extensive publication record establishes his reliability as an expert on issues related to the development of the deaf and communication.

The third and fourth *Daubert* factors are the known or potential rate of error when the technique or theory is applied and the existence of standards controlling the technique's operation. *Daubert*, 509 U.S. at 594. Dr. Lomas' application of normed tests is subject to known or potential rates of error and has standards controlling their operation. The Wechsler Individual Achievement Test, for example, involves four scales comprised of ten required subtests. Individual results are compared to an average to establish the individual's cognitive functioning. Other techniques utilized by Dr. Lomas have similar standards of control and known rates of error.

The final *Daubert* factor of reliability is whether the theory or technique has been accepted by the scientific community. *Id.* Dr. Lomas has utilized normed tests accepted by the scientific community. The Wechsler Individual Achievement Test, for example, is accepted by the scientific community as a means of measuring cognitive functioning in individuals. Dr. Lomas' testimony is further based on observation of the Defendant, personal communication

with the Defendant, Defendant's academic records and family history. Dr. Lomas' testimony relies solely on scientific evidence and does not take into account non-scientific evidence and he is confident that the text messages or Facebook communications referenced by the Government or the video, wherein the interpreter cannot be seen clearly, do not discount his findings and opinions expressed in his testimony or Report.

Because Dr. Lomas techniques and theories meet the standards established in *Daubert*, Dr. Lomas' testimony is reliable under Federal Rules of Evidence 702 and is admissible.

### III. CONCLUSION

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully requests that the Court allow the expert testimony of Dr. Gabriel Lomas at the jury trial set September 3, 2013.

*Respectfully Submitted,*

THE GALINDO LAW FIRM

By:_/s/_Marie _E._Galindo_____

**MARIE E. GALINDO**

Attorney at Law
639 Heights Boulevard
Houston, Texas 77007
Telephone Nos. (432)366.8300/
      (713)299.1510
Facsimile No. (713)651.0776
State Bar No. 00796592

ATTORNEY FOR DEFENDANT

### CERTIFICATE OF SERVICE

On this day, AUGUST 12, 2013, the undersigned counsel provided a copy of the document referenced-above to AUSA AUSTIN BERRY VIA ELECTRONIC MAIL.

_/s/_Marie__E._Galindo_____

**MARIE E. GALINDO**