**FILED**

# IN THE UNITED STATES COURT OF APPEALS

JAN - 8 2015

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

## FOR THE FIFTH CIRCUIT

No. 13-51160

D.C. Docket No. 7:13-CR-61-1

United States Court of Appeals
Fifth Circuit
**FILED**

December 2, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JUAN CARLOS VENEGAS,

Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, Midland Odessa

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

ISSUED AS MANDATE:

By: _____
Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-51160

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JUAN CARLOS VENEGAS,

      Defendant - Appellant

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:13-CR-61-1

---

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Juan Carlos Venegas ("Venegas") appeals his conviction for using a cell phone and the Internet to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). Venegas raises several challenges to his conviction on appeal primarily related to the district court's denial of his motion to suppress evidence. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-51160

I.

On the morning of July 2, 2012, the minor victim's father discovered Venegas, a 20-year-old male, asleep in bed with M.S., the 13-year-old minor victim. M.S.'s father called the police. Sheriff's Deputy Chris Villegas ("Deputy Villegas") and another officer arrived at the house to investigate. When he tried to speak with Venegas, Deputy Villegas discovered that Venegas was hearing-impaired.

While conducting his investigation at the residence, Deputy Villegas picked up Venegas's cell phone and touched the screen. Deputy Villegas saw that the cell phone's cover screen was a picture of Venegas and M.S. together.

Although Deputy Villegas did not formally arrest Venegas at this time, Venegas nonetheless agreed to accompany Deputy Villegas to the police station. Deputy Villegas communicated with Venegas in written English while waiting for a sign-language interpreter to arrive. Deputy Villegas asked Venegas in writing whether he could examine the contents of Venegas's cell phone. Venegas agreed and gave Deputy Villegas the passcode to access the phone. The phone contained a photo of M.S. in his underwear, romantic text messages between Venegas and M.S., and other evidence demonstrating an intimate relationship between the two.

After the sign-language interpreter arrived, Deputy Villegas read Venegas his *Miranda* rights and interviewed him. During the interview, Venegas admitted that he had engaged in sexual activity with M.S., and that he knew M.S. was only thirteen. Deputy Villegas thereafter obtained a warrant for Venegas's arrest.

A federal grand jury charged Venegas with using a cellular telephone and the Internet to knowingly persuade, induce, and entice an individual who had not attained the age of 18 years to engage in sexual activity. Venegas moved to suppress the evidence obtained from his cell phone and the

2

No. 13-51160

inculpatory statements he gave during the interview with Deputy Villegas. The district court denied the motion, and the case proceeded to trial. The jury found Venegas guilty, and the district court sentenced Venegas to 121 months' imprisonment. Venegas now appeals. We consider his arguments below.

## II.

Venegas first challenges the district court's decision to strike Juror Number 9 and replace him with an alternate juror at the beginning of trial. After the jury was selected and sworn, but before the government's opening statement, Juror Number 9 advised the courtroom security officer that he recognized Venegas's parents in the gallery. When questioned by the court, Juror Number 9 stated that his wife and mother-in-law had an ongoing business relationship with Venegas's mother. He also informed the court that he had met Venegas when Venegas was a child, but that he did not recognize Venegas until he saw his parents in the courtroom. Juror Number 9 stated that, while he would try to apply the law evenhandedly, he would have difficulty being fair to both sides. The district court, over Venegas's objection, granted the government's motion to strike Juror Number 9 for cause.

Venegas argues that Juror Number 9 never firmly stated that his relationship with Venegas's family would render him unable to be fair to both sides. He emphasizes that Juror Number 9 did not know Venegas's parents particularly well. He further contends that the district court's examination of Juror Number 9 consisted of "abbreviated and leading questioning."

"This court reviews a district court's decision on a motion to strike a juror as biased for abuse of discretion only."[1] The district court did not abuse its

---

[1] *United States v. Cooper*, 714 F.3d 873, 878 (citing *United States v. Hall*, 152 F.3d 381, 406 (5th Cir. 1998)).

No. 13-51160

discretion here. Juror Number 9 expressly stated at the outset that he knew Venegas's family and did not know if he could be fair. He informed the court, "[I]t would be hard on me having to follow the law, I mean, whichever way I went. I mean, I just – it's just not comfortable for me, honestly." When the judge asked whether he was saying that he "couldn't be fair to the Government in this case," Juror Number 9 responded, "Exactly." The district court therefore reasonably concluded that Juror Number 9 would be unable to apply the law evenhandedly. After reviewing the record, we also reject Venegas's argument that the district court's examination of Juror Number 9 was "abbreviated and leading."

## III.

Venegas also claims that Deputy Villegas unconstitutionally searched his phone records on two occasions: once when he looked at the phone's cover screen at M.S.'s house, and again at the police station after he obtained Venegas's password to unlock the phone. We consider each challenge in turn.

## A.

Shortly after Deputy Villegas arrived at M.S.'s home, he touched the screen on Venegas's cell phone, which revealed a digital photo of Venegas and M.S. posing close together, with their heads touching. Venegas argues that Deputy Villegas's examination of the phone's cover screen amounted to an unconstitutional search.

Because Venegas did not raise this particular issue in his pretrial motion to suppress, we review for plain error.[2] "Such a review requires that there be

---

[2] *See United States v. Cabello*, 92 F. App'x 983, 985 (5th Cir. 2004) (citing *United States v. Johnson*, 127 F.3d 380, 392 (5th Cir. 1997)).

No. 13-51160

error, that is plain, and that affects the defendant's substantial rights."[3] Venegas must also show "that the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[4]

The government urges us to conclude that the search was valid because the phone's cover screen was within Deputy Villegas's "plain view" at the time he arrived at M.S.'s house. Because Deputy Villegas had to manipulate the phone to view the photograph, however, we are hesitant to conclude that the photograph was within Deputy Villegas's plain view.[5]

We need not reach that question, however. Assuming without deciding that the district court erred by admitting the cover screen photograph into evidence, that error did not affect Venegas's substantial rights. The Government produced abundant evidence of Venegas's intimate relationship with M.S., including text messages, Facebook messages, testimony from M.S.'s parents, Venegas's admissions to Deputy Villegas, and other photos depicting M.S. and Venegas together.[6] Most notably, the jury heard evidence that M.S.'s father discovered Venegas in M.S.'s bed, as well as that Venegas admitted to

---

[3] *United States v. Fernandez*, 559 F.3d 303, 316 (5th Cir. 2009) (citing *United States v. Rios-Quintero*, 204 F.3d 214, 215 (5th Cir. 2000)).

[4] *Id.* (quoting *Rios-Quintero*, 204 F.3d at 215).

[5] *Cf. United States v. Zavala*, 541 F.3d 562, 577 n.5 (5th Cir. 2008) ("The 6323 number was not plainly visible to Moreman. He had to open the cell phone and manipulate it in order to retrieve the subscriber number. Thus, Moreman's testimony regarding the 6323 number is not admissible under a plain view theory.").

[6] The police's ability to obtain this additional evidence of Venegas's relationship with M.S. stemmed not from Deputy Villegas's search of the cover screen, but rather from Venegas's presence in M.S.'s bed. In other words, the police would have had ample reason to investigate Venegas's relationship with M.S. even if Deputy Villegas had never looked at the phone's cover screen. For that reason, this additional evidence did not amount to "fruit of the poisonous tree." *See United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013) (quoting *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998) ("Under the 'fruit of the poisonous tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.")).

kissing and engaging in sexual contact "under the clothing" with M.S. even though he knew M.S. was only thirteen years old. Thus, we are satisfied that the district court's decision to admit the cover screen photograph into evidence did not affect the verdict. For that reason, the photo's admission into evidence did not affect the fairness, integrity, or public reputation of judicial proceedings either. The district court therefore did not plainly err by admitting this evidence.

## B.

After transporting Venegas to the police station, Deputy Villegas searched the password-protected contents of Venegas's phone pursuant to Venegas's consent and found incriminating evidence. Venegas acknowledges that he gave Deputy Villegas his password as well as express permission to examine files on his phone. At the police station, Venegas and Deputy Villegas engaged in the following written exchange:

Deputy Villegas: Can I look through your cell phone
Venegas: Yes, why?
Deputy Villegas: I am conducting a investigation [sic], looking into what happened this morning and then hopefully you can go.
Venegas: Oh ok
Deputy Villegas: What is the combo to the lock on your cell when you turn on the cell if you try to look in on the phone it ask [sic] for a number combo.
Venegas: 1122
Deputy Villegas: Thank you.

Nevertheless, Venegas argues that Deputy Villegas's reference to "what happened this morning" constituted a promise to look only at text messages sent on the morning of July 2nd. Venegas contends that he consented to the search solely on the basis of that promise. He claims that Deputy Villegas

unconstitutionally exceeded the scope of that consent by looking at files and messages from dates prior to July 2nd.

Venegas challenged the admission of this evidence in his pretrial motion to suppress. The district court, after a hearing, made factual findings and denied Venegas's motion. We accept those findings unless they are clearly erroneous.[7]

A police officer must generally obtain a warrant before searching digital information on a suspect's cellular phone.[8] Of course, no warrant is necessary if the suspect consents.[9] Although Deputy Villegas did not obtain a warrant here, Venegas consented to the search.

Venegas nonetheless argues that Deputy Villegas exceeded the scope of his consent.[10] The scope of consent is determined by what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect[.] The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer."[11]

The district court found that Deputy Villegas never asked to look only at messages sent on the morning of July 2nd, and the written record of the

---

[7] *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001) (quoting *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995)).

[8] *Riley v. California*, 134 S. Ct. 2473, 2480-95 (2014).

[9] *United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014) (citing *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997)) ("A search conducted pursuant to consent . . . remains one of the well-settled exceptions to the Fourth Amendment's warrant and probable-cause requirements."); *see also United States v. Truong Son Do*, No. 14–CR–0139–CVE, 2014 WL 5312023, at *8 (N.D. Okla. Oct. 17, 2014) ("[E]ven though not mentioned in *Riley*, it is reasonable to assume that police may search a cell phone based on the owner's voluntary consent.").

[10] *See United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666-67 (5th Cir. 2003) (quoting WAYNE R. LAFAVE, SEARCH & SEIZURE § 8.1(c) (3d ed. 1996 & Supp. 2003) ("When the government relies upon consent as the basis for a warrantless search, 'they have no more authority than they have apparently been given by the consent.'")).

[11] *Id.* at 667 (internal quotation marks and citations omitted).

No. 13-51160

exchange between Venegas and Deputy Villegas supports the district court's finding. A reasonable person would have understood Deputy Villegas's reference to "this morning" as a request to search for any evidence on the phone that could explain why Venegas was in M.S.'s bed. Moreover, Venegas answered "Yes" to Deputy Villegas's request to search his cell phone before Deputy Villegas even mentioned he was "looking into what happened this morning." This demonstrates that Venegas did not condition his consent on any temporal limitation to the search. Thus, the district court did not err in concluding that Deputy Villegas did not exceed the scope of Venegas's consent.

Venegas also argues that the district court should not have admitted the cell phone data into evidence because Deputy Villegas did not read him his *Miranda* rights prior to searching the phone. The district court found that Venegas's "custodial status teeter[ed] between voluntary presence and detention" at the time Deputy Villegas searched his cell phone. Even if Deputy Villegas obtained Venegas's consent while Venegas was in custody, however, "*Miranda* warnings are not required to validate a consent search."[12] This is because "[a] statement granting 'consent to a search . . . is neither testimonial nor communicative in the Fifth Amendment sense.'"[13] The district court found that Venegas voluntarily consented to the cell phone search, and the record supports the district court's finding. The district court therefore did not err by admitting the cell phone data into evidence.

## IV.

Venegas argues next that the district court erroneously denied his motion to suppress his inculpatory statements to Deputy Villegas. Venegas

---

[12] *United States v. D'Allerman*, 712 F.2d 100, 104 (5th Cir. 1983).

[13] *United States v. Stevens*, 487 F.3d 232, 242-43 (5th Cir. 2007) (quoting WAYNE R. LAFAVE *ET AL.*, CRIMINAL PROCEDURE § 3.10 (4th ed. 2004)).

No. 13-51160

acknowledges that Deputy Villegas administered *Miranda* warnings both in written English and with the help of a sign-language interpreter before questioning him. Nonetheless, he maintains that his stationhouse confession was neither knowing nor voluntary.

"[T]he privilege against self-incrimination requires that incriminating statements obtained during a custodial interrogation be inadmissible as evidence against a defendant unless the defendant was provided a full and effective warning of his rights."[14] "We review a district court's factual findings surrounding a motion to suppress statements made in violation of *Miranda* under the clear error standard, and review conclusions of law de novo. '[T]he evidence is viewed in the light most favorable to the prevailing party.'"[15]

Venegas first contends that the written *Miranda* warning was defective because he did not clearly acknowledge that he was aware of his rights or that he waived them. The record belies Venegas's argument. The written Statement of *Miranda* Rights contained a section captioned "WAIVER OF RIGHTS" that states "I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I waive them and willingly make a statement." Venegas placed his printed name and signature directly below that sentence. The written *Miranda* statement was not defective in any way.[16]

Venegas also claims that, because he is hearing-impaired, "it was impossible for [him] to read the *Miranda* warnings provided in writing . . . and watch the sign-language interpreter at the same time." Venegas does not explain why his inability to simultaneously watch the sign-language

---

[14] *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

[15] *United States v. Brathwaite*, 458 F.3d 376, 382 (5th Cir. 2006) (citation omitted) (quoting *United States v. Mendez*, 27 F.3d 126, 129 (5th Cir. 1994)).

[16] *See Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (holding that a warning is sufficient if it "touche[s] all of the bases required by *Miranda*").

interpreter would render the warnings ineffective. Indeed, a hearing-impaired suspect may validly waive his or her *Miranda* rights even when the interrogating officer does not employ a sign-language interpreter at all, but instead administers a written warning alone.[17] As long as the hearing-impaired suspect comprehends the written warning and voluntarily agrees to waive his or her rights, the written warning is alone sufficient.[18]

Here, the written warning adequately informed Venegas of his *Miranda* rights. The district court found that Venegas understood the written warning, and the record supports that finding. The district court therefore did not err in denying Venegas's motion to suppress.

## V.

Venegas also argues that the district court erred by barring Venegas's defense expert, Dr. Gabriel Lomas, from testifying at trial. Dr. Lomas would have testified that (1) hearing impaired individuals experience the world differently than persons who are not hearing-impaired; (2) commonly held beliefs about sign language are actually myths; and (3) "Venegas did not personally 'have near the size vocabulary and reading comprehension that individuals who can hear have.'" The district court ruled that Dr. Lomas's testimony would not be relevant to any of the elements of the offense. In the alternative, the district court concluded that the risk that Dr. Lomas's

---

[17] *See United States v. Hamberger*, No. 07-CR-165, 2008 WL 906133, at *1-2, *5, *7-8 (E.D. Wis. Mar. 31, 2008); *People v. Brannon*, 486 N.W.2d 83, 88 (Mich. Ct. App. 1992); *State v. Perry*, 13 S.W.3d 724, 735, 739 (Tenn. Crim. App. 1999).

[18] *See Hamberger*, 2008 WL 906133, at *5, *7-8; *Brannon*, 486 N.W.2d at 88; *see also State v. Hindsley*, 614 N.W.2d 48, 55-58 (Wis. Ct. App. 2000) (finding written warnings insufficient where (1) defendant was not sufficiently proficient in written English to understand written *Miranda* warnings and (2) interrogating officer did not provide an American Sign Language interpreter).

No. 13-51160

testimony would confuse and mislead the jury substantially outweighed its potential probative value.

"We review the admission or exclusion of expert testimony for an abuse of discretion. The district court's ruling will not be disturbed on appeal unless it is manifestly erroneous."[19]

The district court did not abuse its discretion in excluding this testimony. To find Venegas guilty, the jury had to find beyond a reasonable doubt that (1) he knowingly persuaded, induced, enticed, or coerced a minor to engage in criminal sexual activity; (2) he used a facility of interstate commerce, such as a cellular telephone, to commit the offense; (3) he was aware that the minor was younger than eighteen years of age; and (4) by engaging in sexual activity with the minor, he could have been charged with a criminal offense under Texas law.[20] The district court was entitled to conclude that common misconceptions about sign language and the way a hearing-impaired person experiences the world are not relevant to any of these elements. Therefore, Dr. Lomas's testimony would not have been helpful to the jury.

## VI.

Finally, Venegas argues that the district court erred by failing to respond to a jury note or disclose its contents to the parties before accepting the jury's verdict. The jury note consists of a single sentence: "We have a verdict." The trial court did not err by failing to disclose or respond to the jury note, as no response was necessary.

AFFIRMED.

---

[19] *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010) (internal citations omitted).

[20] *United States v. Rounds*, 749 F.3d 326, 333 (5th Cir. 2014); *see also* 18 U.S.C. § 2422(b).